IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS

| | |
|---|---|
| QUINA MYERS, individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>vs.<br><br>WALMART INC.<br><br>*Defendant.* | **Civil Action No.**<br><br>**JURY TRIAL DEMANDED** |

### CLASS ACTION COMPLAINT

Plaintiff QUINA MYERS, ("Plaintiff"), individually and on behalf of all others similarly situated, respectfully submits the following Complaint against Defendant Walmart Inc., ("Walmart" or "Defendant"). Plaintiff makes the following allegations, upon information and belief based on, among other things, the investigation of counsel, and review of public documents.

### NATURE OF THE ACTION

1. Plaintiff bring this action on behalf of herself, and all similarly situated persons who were overcharged for food and baby products between February 1, 2024, and July 29, 2024 (the "Unauthorized Charges").

2. This action is brought to remedy various violations of law in connection with Defendant's breach of contract, implied covenant of good faith and fair dealings and unjustly enriched actions.

3. Specifically, Defendant overcharged customers who bought products including

1

but not limited to food, baby product, appliances, and other products sold at their center.[1]

4.  Between February 1, 2024, and July 29, 2024, Walmart Inc. charged Plaintiff and other individuals' wrong prices for items that were tagged in the aisles.[2]

5.  The allegations herein are based on personal knowledge as to Plaintiff's own experiences and are made as to other matters based on an investigation by counsel, including analysis of publicly available information.

## JURISDICTION AND VENUE

6.  This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, the relevant portion of which is codified at 28 U.S.C. §1332(d). The aggregated claims of the individual Class Members exceed the sum or value of $5,000,000, exclusive of interests and costs, and this is a class action in which more than two-thirds of the proposed Plaintiff class, on the one hand, and Defendant, on the other, are citizens of different states.

7.  This Court has personal jurisdiction over Defendant because Defendant purposefully availed itself to the benefits of doing business in this District by selling the Product to consumers in this District, by maintaining Walmart Stores throughout this District, and because Defendant's principal place of business is within this District. This Court also has personal jurisdiction over Defendant because a substantial portion of the events giving rise to Plaintiffs' claims occurred in this District.

8.  Venue is proper under 28 U.S.C §1391 because a substantial part of the acts, events and omissions giving rise to Plaintiffs' claims occurred in and emanated from this District. Furthermore, Defendant is headquartered in this District, transacts business in this

---

[1] https://www.supermarketnews.com/retail-financial/walmart-says-some-us-customers-were-overcharged-due-technical-issue (last assessed July 29, 2024).
[2] https://finance.yahoo.com/news/walmart-files-show-wrong-prices-183019630.html (last assessed July 29, 2024).

2

District, is subject to personal jurisdiction in this District, and therefore is deemed to be a citizen of this District.

## PARTIES

9. Plaintiff Quina Myers is a citizen of the State of Pennsylvania and resides in Philadelphia, Pennsylvania.

10. On several occasions, Plaintiff shops at Walmart Center on a consistent basis.

11. On February 1, 2024, Plaintiff went shopping for food and baby products at the Walmart Center. Upon purchasing the products and reviewing her receipt Plaintiff noticed that the price she was charged was not the price quoted on product.

12. On June 1, 2024, Plaintiff again went shopping for food and baby products at the Walmart Center. Upon purchasing the products and reviewing her receipt Plaintiff noticed that the price she was charged was not the price quoted on product.

13. Defendant is a corporation headquartered in Bentonville, Arkansas and registered to do business in the State of Arkansas, the State of Pennsylvania and throughout the United States. Defendant's Corporate Headquarters is located at 702 SW 8th Street, Bentonville, Arkansas, 72716.

14. Defendant is an American multinational retail corporation that operates a chain of hypermarkets, discount department stores, and grocery stores.[3]

15. Defendant provides consumer products to individuals and companies and sells digital technology, clothing, food, appliances, and other products.

16. As of December 31, 2023, Defendant realized nearly $648 billion in revenue from the sale of consumer products.[4]

---

[3] https://corporate.walmart.com/about (last assessed July 29, 2024).
[4] https://corporate.walmart.com/content/dam/corporate/documents/newsroom/2024/05/16/Earnings-Release-FY25-

**FACTUAL ALLEGATIONS**

**I.     WALMART IS THE LEADER IN U.S. GROCERY SALES.**

17.    The world's largest retailer often charges higher prices at the register than it posts on store shelves.[5]

18.    According to the National Retail Federation, Walmart is ranked as the number one retailer based on US sales (with Amazon a distant second)[6]; it "has [] ridden a tidal wave of growth during the pandemic. Sales are up about 9% since 2019, to $573 billion..."[7]. Indeed, from 1990 to 2020, the number of items stocked in grocery stores like Walmart nearly doubled from 16,500 to 31,119, and from 1995 to 2020, the average grocery store size grew by 30%.[8]

19.    As the leader in grocery sales in the U.S., Walmart accounted for more than one-quarter of all grocery revenues in the United States, with fiscal year 2024 sales of $648 billion[9]. Walmart "dominates the U.S. grocery market and is, by far, the largest food retailer in the country and so it remains the number one grocery chain."[10]

20.    Walmart's "strategy of race-to-the-bottom prices squeezed out smaller grocers and other local retailers", by causing other larger supermarket chains to expand their own presence in the market by purchasing other regional chains.[11]

---

Q1.pdf (last assessed July 29, 2024).

[5] https://www.dailymail.co.uk/yourmoney/consumer/article-13604399/walmart-lawsuit-deceptive-pricing-checkout.html (last assessed July 29, 2024).

[6] Source: 2022 Top 100 Retailers, bused on US Sales, https://nrf.com/blog/2022- top-100-retailers last visited on July 29, 2022.

[7] Source: Forbes, Lauren Debter, "The World's Largest Retailers 2022", available at: https://www.forbes.com/sites/laurendebter/2022/05/12/worlds-largest-retailers- 2022-amazon-walmart-alibaba/?sh=3f36050559e3, last visited on July 29, 2024.

[8] Source: FMI (The Food Industry Association), Supermarket facts (various years), available at https://www.fmi.org/our-research/supermarket-facts, last visited on July 29, 2024.

[9] https://corporate.walmart.com/content/dam/corporate/documents/newsroom/2024/05/16/Earnings-Release-FY25-Q1.pdf (last assessed July 29, 2024).

[10] Source: FoodIndustry.com, Who are the top 10 Grocers in the United States?, updated for 2020 (n.d.), https://www.foodindustry.com/articles/top-10-grocers-in-the- united-states-2019/ (last visited on July 29, 2024).

[11] Source: Food & Water Watch, 11/2021, Issue Brief, The Economic Cost of Food Monopolies: The Grocery Cartels, available at https://www.foodandwaterwatch.org/wp-

4

21. Walmart also dominates with its consolidated and vertically integrated shopping experience, with stores that include deli, meat, seafood counters and in-store bakeries as well as in-store pharmacies, gasoline pump stations, ready-to-go meals and snacks, and general merchandise.[12]

22. The majority of Walmart U.S. net sales by merchandise category are in the Grocery Category, with $218.944 billion, $208.413 billion, and $192.428 billion for 2022, 2021, 2021 fiscal years respectively, out of $393.247 billion, $369.963 billion, and $341.004 billions of Walmart U.S.'s total net sales for 2022, 2021, 2021 fiscal years, respectively.[13]

## II. WALMART'S FALSE, MISLEADING, UNFAIR AND DECEPTIVE PRACTICES.

### A. Falsely Inflating Roll-Back Products

23. Plaintiff alleges that Defendant charged her a greater price for Tyson Nuggets and Carter's Clothing.

24. On or about February 1, 2024, Plaintiff purchased Tyson Nuggets and Carter's clothing from Walmart.

25. Prior to checking out at the cashier, Walmart quoted and tagged a price for the items in the aisles.

26. Upon reaching the register, when Plaintiff checked out, Walmart's POS system deceptively, programmatically and artificially increased the prices of the products.

27. Generally, Walmart advertises a price on the Price Sticker.

---

content/uploads/2021/11/IB 2111 FoodMonoSeries1-SUPERMARKETS.pdf, last visited on July 29, 2024.
[12] Source: Jenny Rudd, Checking out productivity in grocery stores, 8 PRODUCTIVITY 1 (Dec. 2019), U.S. Bureau of Labor Statistics, available at https://www.bls.gov/opub/btn/volume-8/checking-out-productivity-in-grocery-stores.html, last visited on July 29, 2024.
[13] 2022 Form 10- K.

28. Customers like Plaintiff and many other reasonably rely on and reasonably expect to be charged and to pay the lowest advertised price on the Price Sticker or Rollback Sticker, as applicable.

### B. **Walmart's Conduct Deceives and Misleads Customers and Causes Actual Damage.**

29. Walmart's conduct of Falsely Inflating Rollback and Price Sticker prices has occurred during the Relevant Period.

30. Upon information and belief, Walmart's conduct of Falsely Inflating Rollback and Price Sticker prices has occurred during the Relevant Period in Walmart's stores nationwide.

31. The information on Rollback Stickers, Price Stickers, and Yellow Stickers associated with the products sold at Walmart, is objective pricing information. It is the information that Plaintiff and Customers are entitled to reasonably rely on to:

- identify the price for the product;
- identify products that are on sale or clearance; and,
- compare pricing among brands by retail price, unit price, or quantity.

32. Furthermore, the information on Rollback Stickers, Price Stickers, and Yellow Stickers is integral to the Plaintiff's and Customers' decisions, as it induces them to purchase the offered products.

33. The information on Rollback Stickers, Price Stickers, and Yellow Stickers are relied on by consumers to clearly and accurately depict Walmart's proposed price, yet they have misled and/or deceived consumers about pricing of the product and what the Customer will be charged and pay for the product.

34. In addition, Plaintiff and Customers reasonably expect to be charged and to pay

the advertised price on Rollback Stickers, Price Stickers, and Yellow Stickers for the Products (as applicable), and have such advertised price applied to the actual product offered and being purchased by Walmart, and not applied to a false, artificially quoted weight Product.

35. Moreover, because Walmart has established its presence as the most dominant U.S. grocery store, Plaintiff and consumers often do not have a reasonable alternative to shopping at other stores for their groceries. Therefore, Plaintiff will continue to shop at Walmart.

36. As a result of Walmart's conduct of Falsely Inflating Product Prices, and Overcharging on Products, Plaintiff and Customers were charged and paid amounts that exceeded the lowest advertised prices on Rollback Stickers, Price Stickers, and Yellow Stickers for such products, thereby suffering actual damage.

37. Plaintiff's counsel's investigation identified Walmart's unfair and deceptive pricing practices of Falsely Inflating Products and Overcharging on Products, at Walmart stores in the United States.

## CLASS ACTION ALLEGATIONS

38. Plaintiff bring this action on behalf of herself and as a class action, pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and/or 23(b)(3). Specifically, the class and subclass are defined as follows:

> **Nationwide Class** (the **"Class"**)
> All individuals who, during the applicable statute of limitations, had or have purchased Roll-back, or Price Sticker Products from or at Walmart in the United States.
>
> **Pennsylvania State Subclass** (the "**Pennsylvania Sub-class**")
> All individuals who, during the applicable statute of limitations, had or have purchased Roll-back, or Price Sticker Products from or at Walmart in the United States

39. Excluded from the Class and Sub-classes is Defendant, its parents, subsidiaries,

affiliates, officers and directors, and judicial officers and their immediate family members and associated court staff assigned to this case.

40. Plaintiff reserves the right to modify or amend the definitions of the proposed Class and Sub-class before the Court determines whether certification is appropriate.

41. The particular members of the (i) Nationwide Class and the (ii) Pennsylvania Sub-class, are capable of being described without difficult managerial or administrative problems. The members of the putative classes are also readily identifiable from the information and records in the possession or control of Defendant or its affiliates and agents and from public records.

42. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

43. The proposed Class are so numerous that the joinder of all members is impracticable.

44. This action has been brought and may be properly maintained on behalf of the Class proposed herein under Federal Rule of Civil Procedure 23.

**Numerosity: Fed. R. Civ. P. 23(a)(1)**

45. Upon information and belief, the Class is so numerous that the joinder of all members is impracticable. While the exact number and identities of individual members of the Class are unknown at this time, such information is in the sole possession of Defendant and obtainable by Plaintiff only through the discovery process. Members of the Class may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, Electronic Mail, internet postings, social media, and/or published

notice.

**Typicality: Fed R. Civ. P. 23(a)(3)**

46. Plaintiff's claims are typical of the claims of the members of the Class and Sub-Class, because, inter alia, all Class and Sub-class members have been injured through the uniform misconduct described above and were charged improper and deceptive fees as alleged herein. Moreover, Plaintiff's claims are typical of the Class and Sub-class members' claims because Plaintiff is advancing the same claims and legal theories on behalf of herself and all members of the Class and their respective Sub-class. In addition, Plaintiff is entitled to relief under the same causes of action and upon the same facts as the other members of the proposed Class and Sub-class.

**Adequacy: Fed. R. Civ. P. 23(a)(4)**

47. Plaintiff will fairly and adequately protect the interest of the members of the Class and Sub-class. Plaintiff and the members of the Class and Subclass each maintained an account with Defendant and were harmed by Defendant's misconduct in that they were assessed unfair Deposited Item Return Fees. Plaintiff will fairly and adequately represent and protect the interest of the Class and Sub-class and have retained competent counsel experienced in complex litigation and class action litigation. Plaintiff has no interest antagonistic to those of the Class or Sub-class, and Defendant has no defenses unique to Plaintiff.

**Predominance and Superiority: Fed. R. Civ. P. 23(b)(3)**

48. A class action is superior to all other available means for the fair and efficient adjudication of claims of Plaintiff and Class Members and questions of law and fact common to all Class Members predominate over questions affecting only individual Class Members. The damages or other financial detriment suffered by individual Class and Sub-class members is

relatively small compared to the burden and expense that would be incurred by individual litigation of their claims against Defendant. It would be virtually impossible for a member of the Class or one of the Sub-classes, on an individual basis, to obtain effective redress for the wrongs committed against him or her. Further, even if the Class or Sub-class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. On the other hand, the class action device provides the benefits of adjudication of these issues in a single proceeding, economics of scale, and comprehensive supervision by a single court, and presents no management difficulties under the circumstances here.

49. Plaintiff seeks monetary damages, including compensatory damages on behalf of the Class and Sub-classes, and other equitable relief on grounds generally applicable to the entire Class and the Sub-classes, to enjoin and prevent Defendant from engaging in the acts described. Unless a Class and the Sub-classes are certified, Defendant will be allowed to profit from its unfair and unlawful practices, while Plaintiff and the members of the Class and Sub-class will have suffered damages. Unless a Class-wide injunction is issued, Defendant may continue to benefit from these alleged violations, and the members of the Class and Sub-classes, in addition to the general public, may continue to be unfairly treated.

50. Defendant has acted and refused to act on grounds generally applicable to the Class and the Sub-class, making final injunctive relief appropriate with respect to the Class as a whole.

**Common Questions of Fact and Law: Fed. R. Civ. P. 23(b)(4)**

51. This action involves questions of law and fact common to the Class. The common legal and factual questions include, but are not limited to, the following:

   a. Whether Defendant's pricing practices of Falsely Inflating Falsely Inflating Product Prices, and Overcharging on Products are false, deceptive, misleading, unfair and/or unlawful;

   b. Whether Defendant's Rollback Stickers, Price Stickers, and/or Yellow Stickers utilized with Product Prices are false, misleading and deceptive;

   c. Whether Defendant's conduct violates the Pennsylvania's Unfair Trade Practices and Consumer Protection Law, Pennsylvania common law, and other states' laws;

   d. Whether Defendant should be enjoined (temporarily and permanently) from selling Rollback Stickers, Price Stickers, and/or Yellow Stickers (as applicable) that are false, misleading, and deceptive;

   e. Whether Defendant should be enjoined from charging Customers anything, but the lowest offered price for Products that are identified on the Rollback Stickers, Price Stickers, and/or Yellow Stickers;

   f. Whether Plaintiff and the Class Members sustained actual damages; and

   g. Whether Defendant has unjustly enriched itself by its deceptive conduct.

## CAUSES OF ACTION

### COUNT I
**VIOLATION OF PENNSYLVANIA'S UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW**
**Pennsylvania Statute Section 201-1, et seq.**
**(On behalf of Plaintiff and the Class)**

52. Plaintiff repeats and realleges each and every allegation mentioned in Paragraphs 1-51 as if fully set forth herein. Plaintiff brings this count on behalf of herself and members of the Class against Defendant.

53. Pennsylvania's Unfair Trade Practices and Consumer Protection Law Pennsylvania Statute Section 201-1, et seq., ("UTPCPL") was enacted to prohibit businesses in Pennsylvania from engaging in "fraudulent or deceptive conduct which likely creates a likelihood

of confusion or of misunderstanding" during a transaction." 73 P.S. §201-2(4)(xxi).

54. Plaintiff is a "consumer" as defined by Pennsylvania Statute § 201-2(4)(2).

55. Defendant's advertising, soliciting and offering of, and the Plaintiff's and the Customer's transactions of purchasing from or at Walmart, the Products, is "trade or commerce" as defined by Pennsylvania Statute § 201-2(3).

56. For the reasons discussed herein, Defendant violated UTPCPL, Pennsylvania Statute § 201-1, et seq., by Falsely Inflating Product Prices and Overcharging on Products, as described herein.

57. Defendant's unconscionable, deceptive, and unfair acts and practices of Falsely Inflating Product Prices and Overcharging on Products, as described herein, were likely to, and did in fact, deceive members of the public, including Customers (like Plaintiff and Class members) who were acting reasonably under the circumstances and to their detriment.

58. In committing the acts alleged above, Defendant engaged in unconscionable, deceptive, and unfair acts and practices acts by charging Customers prices for Products that exceeded the lowest advertised prices on those products' Rollback Stickers, Price Stickers, and/or Yellow Stickers (as applicable).

59. As a result of Defendant's conduct alleged herein, Plaintiff and Customers paid higher prices for Products than the lowest advertised price on the Rollback Stickers, Price Stickers, and/or Yellow Stickers associated with the products, resulting in actual damages by such overpayments for the products.

60. Defendant's actions constitute unconscionable, deceptive, or unfair acts or practices because, as alleged herein, Defendant advertised, marketed, and sold the Products at one value but charged consumers a higher value at checkout, thereby offending an established public

policy, and engaging in unethical, oppressive, and unscrupulous activities that are and were substantially injurious to Customers.

61. Defendant's conduct is unconscionable, deceptive and unfair, as it is likely to, and did, mislead Customers who were acting reasonably under the circumstances.

62. Defendant induced Customers to select and purchase Products based on the pricing information on the Stickers and then to purchase these products at higher prices for Defendant's benefit.

63. As a direct and proximate result of Defendant's conduct, Plaintiff and Class members have been harmed and suffered actual damages in that they paid Defendant more for Products than advertised on the Rollback Stickers, Price Stickers, and/or Yellow Stickers.

64. Plaintiff and Class members have been and will continue to be deceived or misled by Defendant's false, misleading, unfair and deceptive pricing practices which, on information and belief, are ongoing.

65. Defendant knew and calculated that its practices would mislead consumers, continuing such practices despite knowledge of the deception and the harm it caused and causes. Such conduct thus is willful and in wanton disregard of Plaintiff's and Class members' rights.

66. Plaintiff and Class members are entitled to recover actual damages to the extent permitted by law, including § 201-2, Pennsylvania Statutes; reasonable attorneys' fees and costs; injunctive relief's; and other relief as deemed appropriate or permitted pursuant to the relevant law.

67. Plaintiff reserves the right to allege other violations of UTPCPL as the case unfolds and as Defendant's conduct is ongoing.

## **COUNT II**

**DECLARATORY JUDGMENT**
**Pennsylvania Statute Section 201-1, et seq.**
**(On behalf of Plaintiff and the Class)**

68. Plaintiff repeats and realleges Paragraphs 1-51 as if fully set forth herein.

69. Plaintiff bring this count on behalf of herself and the Classes against Defendant.

70. UTPCPL, Section 201-9.1 states "[t]he court shall have jurisdiction of all questions arising in such proceedings and may make such orders and judgments therein as may be required."

71. As alleged supra, and also specified in Count I, Plaintiff and the members of the Pennsylvania Class have been aggrieved by Defendant's violation of UTPCPL.

72. Plaintiff, individually and on behalf of the members of the Pennsylvania Class, seeks to obtain a declaratory judgment:

    a. Finding that Defendant's conduct of (i) Falsely Inflating Product Prices, and (ii) Overcharging on Products, individually and in the aggregate, are acts and practices that violate UTPCPL; and

    b. Enjoining Defendant, which has violated, is violating, and is likely to continue to violate UTPCPL with respect to (i) Falsely Inflating Product Prices, and (ii) Overcharging on Products, until Defendant has implemented procedures, controls and processes, including modifications to its databases to ensure that (a) Defendant's Rollback Stickers, Price Stickers, and/or Yellow Stickers are accurate and not misleading with respect to the retail price of the product, and (b) Defendant only charges Customers the lowest offered price for Products that is identified on the Rollback Stickers, Price Stickers, and/or Yellow Stickers.

73. Plaintiff and Class members are entitled to declaratory and injunctive relief,

reasonable attorneys' fees and costs, and other relief as deemed appropriate or permitted pursuant to the relevant law.

## COUNT III
### UNJUST ENRICHMENT
**(On behalf of Plaintiff and the Class)**

74. Plaintiff incorporates paragraphs 1-51 as if fully set forth herein.

75. Plaintiff bring this count on behalf of herself and the Classes against Defendant.

76. Plaintiff and the Class members conferred benefits on Defendant by purchasing Products from Defendant's store.

77. Plaintiff and Class members provided a financial benefit on Defendant by paying more for Products than the lowest advertised price on the Rollback Stickers, Price Stickers, and/or Yellow Stickers.

78. Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff's and the other members of the Class's purchases of the Products at prices that exceeded the lowest advertised price on the Rollback Stickers, Price Stickers, and/or Yellow Stickers. Retention of those monies under these circumstances is unjust and inequitable because Defendant's Stickers were false and misleading to Customers, which caused injuries to Plaintiff and the other members of the Classes.

79. Defendant knew that Plaintiff and Class Members conferred a benefit on Defendant and accepted or retained that benefit.

80. Through its false, misleading, unfair and deceptive pricing practices, Defendant unjustly received and retained benefits at the expense of Plaintiff and Class members, specifically the difference in price between what was charged and what should have been charged, and the failure to provide the Products at the lowest prices advertised and represented on the Rollback

Stickers, Price Stickers, and/or Yellow Stickers.

81. By and through Defendant's false, misleading, unfair and deceptive pricing practices, Defendant has received, had use of, and accrued interest on these funds wrongfully obtained from Plaintiff and Class members.

82. Defendant should not be permitted to retain the money belonging to Plaintiff and Class members.

83. Plaintiff and Class members have suffered pecuniary harm as a direct and proximate result of Defendant's conduct.

84. Plaintiff and Class members have no adequate remedy at law.

85. Plaintiff and Class members are entitled to restitution of, disgorgement of, and/or the imposition of a construct trust upon all profits, benefits, and other compensation obtained by Defendant, and for such other relief that this Court deems proper, as a result of their unfair, misleading, and inequitable conduct.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully request that the Court enter judgment against Defendant in the form of an Order:

A. Certifying this action as a class action under Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure and naming Plaintiff as a representative of the Class and Plaintiff's undersigned attorneys as Class Counsel to represent the Class and Sub-class Members;

B. Naming Plaintiff Quina Myers as the representative of the Pennsylvania Sub-class;

C. Declaring that Defendant's conduct violated the laws referenced herein;

D. Finding in favor of Plaintiff and the Class and Sub-classes on all counts asserted herein;

E. Awarding actual, consequential, punitive, statutory, and treble damages;

F. For injunctive relief as pleaded or as the Court may deem proper;

G. For disgorgement and restitution to Plaintiff and the Class and/or Sub-class members of all monies received or collected from Plaintiff and the Class and/or Sub-class members and all other forms of equitable relief;

H. Costs including reasonable attorneys' fees, court costs, and other litigation expenses; and,

I. Any other relief the Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff, individually and on behalf of all those similarly situated, hereby requests a jury trial, pursuant to Federal Rule of Civil Procedure 38, on any and all claims so triable.

Dated: August 15, 2024                                     Respectfully Submitted,

*/s/ Jacob D. White*
Jacob Dylan White, Esq.
Ark. Bar No. 2015239
Russell Winburn, Esq.
**TAYLOR KING LAW**
410 N. Thompson St., Suite B
Springdale, AR 72764
Telephone: 479.935.1761
Fax: 479.334.5069
Email: jacobwhite@taylorkinglaw.com
          russellwinburn@taylorkinglaw.com

-AND-

*/s/ Seth Little*

17

Seth Little, Esq.[*]
**POULIN | WILLEY | ANASTOPOULO, LLC**
32 Ann Street
Charleston, SC 29403
Tel: (803) 222-2222
Email: seth.little@poulinwilley.com
        cmad@poulinwilley.com

*Attorneys for Plaintiffs*
[*]*Pro Hac Vice forthcoming*